IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-00290-MSK-CBS

JOHNSTOWN FEED & SEED, INC.,
WAYNE SPRENG, and
RHONDA SPRENG,

      Plaintiffs,

v.

CONTINENTAL WESTERN INSURANCE COMPANY,

      Defendant.

_____

**OPINION AND ORDER GRANTING, IN PART,
MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion for Partial

Summary Judgment **(# 60)**, the Plaintiffs' response **(# 68)**, and the Defendant's reply **(# 71)**.

<u>FACTS</u>

The general factual background is summarized here, and amplified as necessary in the

discussion of particular arguments. Plaintiff Johnstown Feed and Seed ("JFS") is a business

entity, wholly owned by Plaintiffs Wayne and Rhonda Spreng. JFS was covered by a general

liability insurance policy issued by Defendant Continental Western Insurance Co.

("Continental"). On October 2, 2005, a fire broke out in JFS' building, causing significant

damage and discontinuance of the bulk of business operations. A subsequent investigation

revealed that the cause of the fire was likely the negligence of a welding contractor who had

been performing some work on the premises prior to the fire. The Plaintiffs allege that

1

Continental – who also insured the welding contractor – promised timely indemnification and payment of benefits if the Plaintiffs would agree to forego suit against the welding contractor. The Plaintiffs refused, and allege that, thereafter, Continental has engaged in variety of acts that violate the terms of the insurance policy and otherwise constitute actionable conduct.

The Plaintiffs' Complaint **(# 3)** alleges ten causes of action: (i) a claim for declaratory relief as to the rights of the Plaintiff under the terms of the insurance policy; (ii) breach of contract, relating to the policy; (iii) breach of the duty of good faith and fair dealing, relating to Continental's compliance with the terms of the policy; (iv) fraud, in that Continental made unspecified "false representations of fact regarding the insurance coverage prior to the loss, or regarding the denials of the benefits of the insurance coverage after the loss"; (v) conversion, in that Continental has exercised dominion and control over property belonging to the Plaintiffs – namely, certain JFS inventory taken by Continental and sold as salvage; (vi) abuse of legal process, in that Continental "intentionally caused OSHA to baselessly investigate and cite [JFS] for a violation that actually did not occur; (vii) intentional infliction of emotional distress, in that Continental knew the Sprengs were suffering financially, and purposefully chose to delay and deny insurance benefits to them; (viii) violation of the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-101 *et seq.*, in that Continental engaged in unspecified deceptive trade practices; (ix) outrageous conduct, of an unspecified character, directed at the Sprengs; and (x) civil conspiracy, in that Continental conspired with its agent, Murphy Insurance, to deprive the Plaintiffs of the benefits of the policy.

Continental moves for summary judgment **(# 60)**, arguing: (i) the Sprengs lack standing to bring claims in their own names, as the insurance policy was issued to and insured only JFS,

not the Sprengs as individuals; (ii) that the Plaintiffs cannot establish a conversion claim because the salvaged inventory was taken by a third-party salvager retained by the Plaintiffs, not Continental; (iii) the Plaintiffs cannot establish a claim for abuse of process because the OSHA proceeding was not judicial in nature; because the citation was the result of an investigation initiated by OSHA, not Continental; and because the Sprengs were not injured by the citation which was issued only against JFS; (iv) the Plaintiffs cannot recover on the intentional infliction of emotional distress and outrageous conduct claims because JFS, as a corporate entity, cannot maintain such claims and the Sprengs lack evidence of sufficient emotional injury traceable to Continental's conduct; (v) the Plaintiffs cannot establish a CCPA claim because they cannot show that any improper practices by Continental "impact the public," as opposed to the Plaintiffs individually; (vi) the Plaintiffs cannot establish the fraud claim because they cannot show that any of the seven particular statements listed by the Plaintiff were known by Continental to be false at the time they were made; and (vii) the Plaintiffs cannot establish the civil conspiracy claim because they cannot show an agreement between Continental and Murphy Insurance with regard to a particular objective, nor show an overt act in furtherance of such agreement.

## ANALYSIS

### A.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that

must be proved for a given claim or defense, sets the standard of proof and identifies the party

with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of

and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter

for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment

motion, a court views all evidence in the light most favorable to the non-moving party, thereby

favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

2002).

If the moving party does not have the burden of proof at trial, it must point to an absence

of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.

If the respondent comes forward with sufficient competent evidence to establish a *prima facie*

claim or defense, a trial is required. If the respondent fails to produce sufficient competent

evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of

law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B. Standing of the Sprengs**

Continental challenges the Spreng's standing in this case, arguing that because the

insurance policy at issued named only JFS as the insured, the Sprengs lack any injury in fact. In

order to have sufficient standing to sue, a plaintiff must have suffered an "injury in fact" –

namely, an actual or imminent, concrete and particularized invasion of a legally-protected

interest. *ACLU of New Mexico v. Santillanes*, 546 F.3d 1313, 1317-18 (10th Cir. 2008). The

injury must be causally connected and fairly traceable to the conduct of the defendant. *Id.*

Standing is an essential component of the Court's subject-matter jurisdiction; without it, the Court lacks the power to adjudicate the claims. *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1223 (10th Cir. 2008). Thus, a plaintiff, as the party invoking the jurisdiction of the court, bears the burden of proving sufficient standing. *Day v. Bond*, 500 F.3d 1127, 1132 (10th Cir. 2007). Standing is assessed on a claim-by-claim basis, and a plaintiff who has sufficient standing to raise some claims may lack standing to raise others. *See e.g. Horstkoetter v. Dept. of Public Safety*, 159 F.3d 1265, 1279 (10th Cir. 1998) ("Ms. Horstkoetter and Ms. Dean have standing only to raise the same claims as their husbands, and do not have standing to raise any separate claims of their own").

With regard to the claims that turn on rights embodied in the insurance policy, it is undisputed that the Sprengs are not named insureds on the policy. Nevertheless, the Sprengs offer several arguments as to why they have standing to sue in their own name. First, they contend that, as both shareholders of a closely-held corporation and managing agents of that corporation, they have an individual interest, separate from the corporate interest, sufficient to confer standing. *Citing Hanna Mining Co. v. Minnesota Power & Light Co.*, 573 F.Supp. 1395, 1398 (D. Minn. 1983) *and Lerner v. Stone*, 252 P.2d 533 (Colo. 1952). Neither case is persuasive.

In *Hanna Mining*, the plaintiff was a corporation that had negotiated a contract on behalf of a subsidiary corporation, Butler, in which it had a partial ownership interest. When the defendant attempted the alter the contract it had with Butler, the plaintiff sued. The court found that the plaintiff had standing to sue to vindicate the contractual breach, even though it was not nominally a party to the contract, because it was both a shareholder and agent of Butler. "The

matter before this court," it explained, "is not a situation where a small shareholder with no management interest is trying to usurp the corporation's cause of action." 573 F.Supp. at 1398. Rather, the court noted that the plaintiff is a "managing agent" of Butler, had negotiated the contract on Butler's behalf, and had "assumed primary responsibility for monitoring and enforcing" the contract's terms. "This powerful combination of management and ownership roles makes it clear that [the plaintiff's] interest is substantially identical with that of [Butler's]." *Id.* Thus, the court found the plaintiff to be a real party in interest with sufficient standing to sue.

*Hanna* is unpersuasive for several reasons. First, this Court notes that the *Hanna* court cited no meaningful law in support of its conclusions that a managing agent of a corporate entity has standing to assert claims in the agent's name for breach of a contract between the corporate entity and a third party. The sole case cited by *Hanna* in its analysis is *Reserve Mining Co. v. Environmental Protection Agency*, 514 F.2d 492, 534 (8th Cir. 1975). *Reserve* was a case in which the court found that the parent corporations of the plaintiff were properly joined as involuntary joined as parties under Fed. R. Civ. P. 19, on the grounds that the plaintiff corporation was their alter ego and an injunction against the plaintiff corporation would not otherwise afford complete relief. *Id.* at 533-34 ("It is the finding of this Court that the independent corporate identity of Reserve Mining Company must be and is disregarded . . . this subsidiary (Reserve) is so dominated by its parents (Armco Steel Corp. and Republic Steel Corp.) that it is a mere agency or instrumentality of the parents"). Thus, the sole case on which *Hanna* relied for its reasoning is both factually and legally distinguishable.[1]

_____

[1]Similarly, *Lerner* involves a counterclaim by an individual, Stone, who was essentially found to be the alter ego of the corporate entity, such that the trial court could either "[find] that Stone was the real party in interest and permit him the opportunity to establish his counterclaim;

Second, the outcome in *Hanna* finds no support in Colorado law. As the court in *Hanna* explained, in a diversity case such as this one, state law provides the substantive rights upon which standing is based. 573 F.Supp. at 1397. The Court is aware of, and the Sprengs cite no, Colorado law recognizing some "managerial" exception to the general rule that shareholders in a corporation lack standing to sue in their own names to vindicate wrongs done to the corporate entity. *See generally Nicholson v. Ash*, 800 P.2d 1352, 1356 (Colo. App. 1990) (reciting "several well-founded reasons why a stockholder is precluded from asserting a personal right of action against a third party whose actions have caused damage to the corporation" including "prevent[ing] a multiplicity of suits by the various stockholders"). To hold otherwise – that defendants accused of harming a corporate entity can also be held liable to every individual claiming a significant managerial responsibility in that corporate entity – would multiply the law's reach far beyond that which society has seen to define.

Next, the Sprengs argue that they should be considered third-party beneficiaries of the insurance policy held by JFS. In limited circumstances, a person who is not a party to a contract may enforce the terms of that agreement if it is expressly stated in the contract or is apparent from the agreement and surrounding circumstances that the benefits of the contract are directed conferred upon the third party, not incidental. *East Meadows Co. v. Greeley Irr. Co.*, 66 P.3d 214, 217 (Colo. App. 2003). In determining third-party beneficiary status, the key inquiry is

---

or, on the other hand, permit him, on his motion, timely made, to make the corporation a party defendant." 252 P.2d at 536. The Court explained that "All of the business of the corporation was acquired from Stone as his personal interest" and that any loss or gain to the corporation "would solely affect Stone's interest therein." *Id.* at 536-37. Unlike *Lerner*, the Sprengs do not allege that JFS was essentially their alter ego, such that the corporate form could be pierced and all assets and liabilities of JFS could be treated as assets and liabilities of the Sprengs. Thus, *Lerner* is inapposite.

whether the contracting parties intended to confer a benefit on the third party, and that intent must either appear on the face of the contract or arise by necessary implication. *Id.* The Sprengs admit that the policy makes no reference to them, and thus, are left to argue that one must necessarily infer from the terms of the policy that Continental and JFS intended the performance under the policy to flow to the Sprengs. The only evidence the Sprengs point to on this point is the fact that, when applying for insurance from Continental, Mr. Spreng "just signed his signature," without designating his title with JFS. Even taken in the light most favorable to the Plaintiffs, this is insufficient to demonstrate that JFS and Continental shared an intention that the benefits of the policy would run to the Sprengs as individuals, particularly when the policy makes no other reference to them. The Court finds that the Sprengs have failed to establish their right to maintain contract-based claims under a third-party beneficiary theory.

The Court has considered the remaining arguments in the Plaintiffs' response on this issue and find them to be without merit. Thus, the Court finds that the Sprengs lack standing to assert contract-type claims based on the policy between JFS and Continental. This does not, however, necessarily require the dismissal of the Sprengs as parties. The fact that owners of stock in a corporation lack standing to assert claims belonging to the corporation does not preclude them from asserting claims for injuries that inure to them as individuals, not shareholders. *Nicholson*, 800 P.2d at 1356-57. Here, the Plaintiffs' non-contract claims allege violations of common-law duties that arguably inure to the Sprengs as individuals, not as stockholders of JFS. For example, if Continental, in the course of its dealings with JFS, engaged in outrageous conduct or intentionally inflicted emotional distress on the Sprengs as individuals, the fact that the Sprengs are owners of JFS would not preclude them from maintaining tort

claims against Continental in their individual capacities. *Id.* Without reaching the merits of any of the particular claims at this stage of the analysis, it is sufficient for the Court to find that although the Sprengs lack standing to assert any of the first three claims for relief – those sounding in contractual breach of the policy issued to JFS – they apparently have sufficient standing to assert the remaining claims in the Complaint in their own names.

### C. Conversion claim

Continental seeks judgment on the Plaintiffs' claims for conversion of certain inventory that was removed from the JFS premises by a salver. To prove a claim of conversion under Colorado law, a plaintiff must show: (i) that Continental exercised dominion or ownership of property; (ii) that the property belonged to the Plaintiffs; (iii) that the Plaintiffs did not authorize Continental's actions.[2] *Glenn Arms Assocs. v. Century Mortg. & Investmt. Corp.*, 680 P.2d 1315, 1317 (Colo. App. 1984). Continental argues that the Plaintiffs cannot show that it – as opposed to a third party acting at the Plaintiffs' direction – exercised dominion over their property.

Continental supports its motion with a transcript of the deposition of Terry Stumme, the adjuster involved in the JFS matter. In his testimony, Mr. Stumme stated that, in his experience, the insurer does not hire the salver; rather, "they are a contractor that's made available to the policyholder. . . ultimately it's the decision of the policyholder as to whether or not they should be employed in the process." Asked whether the salver would agree that it was retained by JFS, not Continental, Mr. Stumme responded "I don't know what [the salver] would say. But I'm

---

[2]Arguably, a fourth element requires a demand by the property's owner that the property be returned. *Glenn Arms*, 680 P.2d at 1317.

telling you that it should be an arrangement between the salver and the policyholder." From this, the Court understands Mr. Stumme to be acknowledging that although in his experience, the insured and the salver usually make arrangements for the salver's retention, he has no personal knowledge as to whether that is the procedure that was used here.

The Plaintiffs' response to this assertion cites almost entirely to allegations in the Complaint. When faced with a motion for summary judgment, a party with the burden of proof may not simply rest on assertions contained within his pleadings, and must come forward by adducing specific facts supporting the claim, demonstrated by reference to affidavits, deposition transcripts, or specific exhibits. *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

Thus, the Court disregards any factual assertions by the Plaintiffs supported only by reference to the Complaint and examines only those assertions that cite to evidentiary material.[3]

---

[3]Later in its response, the Plaintiff contends that because Mr. Spreng orally verified the contents of the Complaint at his deposition, the Complaint should be treated as the equivalent of an affidavit for purposes of summary judgment. A court may treat a verified complaint as an affidavit for summary judgment purposes if the complaint, as verified, bears all of the necessary characteristics of an affidavit: if the allegations therein are made on personal knowledge, set forth facts that would be admissible in evidence, affirmatively show the affiant's competence to testify on the matters therein, and are not conclusory. *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002); *see also In re Grandnote Country Club Co., Ltd.*, 252 F.3d 1146, 1153 (10th Cir. 2001) (verified complaint can be considered on summary judgment only if the facts asserted therein are within the pleader's personal knowledge).

The verification provided by Mr. Spreng does not necessarily rise to this level. In a series of three brief questions, Mr. Spreng answered affirmatively "Have you had an opportunity to read this Complaint in its entirety," "Are you familiar with the factual allegations made in this Complaint," and "To your knowledge, are all the factual allegations in this Complaint true and accurate." *Docket* # 60, Ex. A-5 at 269. Notably, Mr. Spreng did not testify that he had personal knowledge of every fact alleged in the Complaint; his testimony was that he was "familiar with the factual allegations made in [it]," which does not necessarily equate to having personal knowledge of the facts supporting each allegation. Any ambiguity on this point is resolved by the subsequent question, which limits Mr. Spreng's verification "to [his]

In the discussion of the conversion claim, the Plaintiffs cite only once to evidentiary material, drawing the Court's attention to pages 80 and 81 of Mr. Spreng's deposition transcript, attached as Exhibit A-5 to Continental's motion. In that passage, Mr. Spreng testifies that "Continental Western sets up for a salvage company to come take all my inventory away." Taken in the light most favorable to the Plaintiffs, this testimony could be understood to suggest that it was Continental, not the Plaintiffs, that contracted with the salver to remove the inventory.

However, this same deposition excerpt defeats any contention by the Plaintiffs' that Continental took possession of JFS' inventory without the Plaintiffs' authorization. Mr. Spreng testified that the inventory at issue was removed from the scene of the fire and set aside. He stated that "It [sat] for over a month . . . starting to rot, heat up, stink." Mr. Spreng testified that "We are calling [Continental], telling them to fix this problem. Take it. Do whatever you are going to do with it." Thus, even if the record permits an inference that Continental retained the salvage company to remove the inventory, the record compels a conclusion that Continental did so pursuant to the express instruction of the Plaintiffs. Because it is undisputed that Continental's exercise of dominion over the inventory was authorized, the Plaintiffs' claim for conversion fails.

---

knowledge." At best, then, Mr. Spreng verified only those unspecified facts in the Complaint as to which he had personal knowledge. Without some indication as to which facts those are, the Court cannot treat all of the allegations in the Complaint as verified, and thus, cannot treat the Complaint as evidentiary material for summary judgment purposes.

In any event, the Court has also reviewed the specific portions of the Complaint cited by the Plaintiffs as supporting the conversion claim, and finds that, even if treated as evidentiary material supporting the Plaintiffs' position, the Court would nevertheless reach the same conclusion for the same reasons.

The Plaintiffs appear to assert an alternative theory supporting the conversion claim – that the converted property was not the inventory itself, but rather, the proceeds from its sale that Continental did not timely pay over to the Plaintiffs. This theory is problematic for several reasons. First, it is premised upon a number of assumptions – that the proceeds of the salvage were property of the Plaintiffs, that Continental was under an obligation to promptly turn over those proceeds to the Plaintiffs – that find no factual support in the record. As quoted above, the record establishes only that the Plaintiffs instructed Continental to remove the inventory and "[d]o whatever you are going to do with it." Nothing in the record establishes that the Plaintiffs and Continental reached an agreement that the proceeds of the sale of the inventory would be considered the Plaintiff's property or that they would be delivered to the Plaintiffs by a certain date. Thus, the record does not reflect any facts from which the Court could find that the proceeds of the sale of the inventory was property belonging to the Plaintiffs during the time it was held by Continental.

In addition, the Court finds that, to the extent Mr. Spreng's testimony can be read to suggest a belief that Continental improperly retained the funds that could be considered the property of the Plaintiffs, it is not apparent that Mr. Spreng offers that testimony of his own personal knowledge. He stated "Then they send out the salvage company to vacuum out our grain tanks . . . and they sell it. Those guys follow the same rules as everybody else. They pay within 10 days. But I sit there for another month still asking daily for payment on my inventory which I didn't get until February. The stuff they hauled away they were paid for in 10 days, but they couldn't give me a dollar?" The entire premise of the Plaintiffs' alternative conversion theory is that Continental (or its agent, the salvage company) received payment for the salvaged

inventory within 10 days, but withheld it from the Plaintiffs for a month or more. But Mr. Spreng's testimony gives no indication of the basis upon which he has personal knowledge that Continental (or the salvage company) were indeed paid for the inventory within 10 days, beyond his supposition that "Those guys follow the same rules as everybody else." Without evidence, based on Mr. Spreng's personal knowledge, of when Continental received the proceeds of the sale of the salvaged inventory, the Plaintiffs are unable to show that Continental improperly retained those funds.

Accordingly, Continental is entitled to summary judgment on the Plaintiffs' claim for conversion.

### D. Abuse of process

Continental also seeks summary judgment on the Plaintiffs' claim for abuse of process. To state a claim for abuse of process under Colorado law, the Plaintiffs must show: (i) that Continental invoked a judicial process; (ii) that it did so with an ulterior purpose; (iii) that its use of the process was in a manner that was inconsistent with its proper use; and (iv) that the Plaintiffs suffered damage as a result. *Moore v. Western Forge Corp.*, 192 P.3d 427, 438 (Colo. App. 2007). Abuse of process lies where a party invokes legal proceedings not for their intended purpose, but in an effort to obtain collateral results that would not be available by the normal operation of such proceedings. *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App.1994), *citing Restatement*, 2d Torts, § 682, comment b (no claim lies "when the process is used for the purpose for which it is intended, [even though] there is an incidental motive of spite or an ulterior purpose"). For example, a party engages in abuse of process when he files liens against his adversary, not because the filer claims an interest in the

property, but to compel the adversary to concede a child custody proceeding. *James H. Moore*, 892 P.2d at 373, *citing Scozari v. Barone,* 546 So.2d 750 (Fla. App.1989).

Continental first argues that the Plaintiffs cannot establish the abuse of process claim because the OSHA citation that the Plaintiffs accuse Continental of procuring is not "judicial" in nature. Colorado recognizes an abuse of process claim only when the judicial process is involved; improper use of administrative or other non-judicial proceedings is insufficient to support the claim. *Moore*, 192 P.3d at 438-39.

The Plaintiffs argue first that the Supreme Court considers administrative proceedings, such as those before OSHA, to be judicial in nature. *Citing Butz v. Economou*, 438 U.S. 478, 512-14 (1978). This argument is frivolous. *Butz* considered the question of whether administrative proceedings were "functionally comparable" to judicial proceedings such that the administrative judge should be entitled to absolute judicial immunity. Nothing in *Butz* or the other cases cited by the Plaintiffs on this point stand for the proposition that administrative proceedings are "judicial" in nature for purposes of recognizing a claim for abuse of process.

Next, the Plaintiffs argue that, contrary to the clear statement of Colorado law in *Moore*, the Colorado Supreme Court recognized an abuse of process claim involving a complaint to an administrative agency in *Concerned Members of Intermountain Rural Electric Assn. v. District Court*, 713 P.2d 923, 924 (Colo. 1986). This citation is so inapt as to cause the Court to question the sincerity of this particular argument. It is clear from the decision in *Concerned Members* that the abuse of process was "an action pursuant to C.R.C.P. 106" filed in the District Court of Jefferson County. *Id.* at 923-24. Nothing in the case is susceptible to a conclusion that the

complaint at issue was one directed to an administrative agency, and the Plaintiffs' argument to that effect borders on the sanctionable.

Finally, the Plaintiffs argue that *Moore*, despite squarely addressing the question, was wrongly decided. The Plaintiffs argue that the Court in *Moore* misconstrued *Brodeur v. American Home Assurance Co.*, 169 P.3d 139, 149 (Colo.2007), when the *Moore* court cited it for the proposition that "worker's compensation proceeding[s] . . . do not involve any contact with a judicial forum." Assuming – without necessarily finding – the Plaintiffs to be correct that the Court in *Moore* misconstrued *Brodeur*, that mistake does not vitiate the holding in *Moore* that proceedings before administrative agencies will not support an abuse of process claim. *Moore*'s reasoning on this fundamental point did not rely on *Brodeur*, but on the fact that "the vast majority of jurisdictions decline to recognize abuse of process in nonjudicial proceedings." 192 P.3d at 439 (citing cases from 7 different jurisdictions).[4] If the court erred in concluding that a worker's compensation proceeding was nonjudicial, that mistake affected only the correctness of the court's dismissal of the plaintiff's abuse of process claim in that case; it does not implicate the Court's reasoning that, as a matter of law, claims premised on misuse of administrative proceedings are not cognizable.

Because the Plaintiffs' claim for abuse of process depends on proceedings before an administrative agency, it fails as a matter of law in Colorado. Continental is entitled to summary judgment on this claim.

### E. Outrageous conduct/intentional infliction of emotional distress

---

[4]The fact that, as the Plaintiff argues, Rhode Island law is to the contrary, and that claims for abuse of process in administrative proceedings are cognizable there, is of no moment. The Court in *Moore* found that to be the minority view and declined to adopt that rule in Colorado.

Continental moves for summary judgment on the Plaintiffs' claims for outrageous conduct and intentional infliction of emotional distress, arguing that the Plaintiffs cannot establish that they suffered severe emotional distress. It is by no means clear that, under Colorado law, claims for intentional infliction of emotional distress and for outrageous conduct are analytically distinct.[5] *See e.g. Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999) (referring to "a claim for intentional infliction of emotional distress by outrageous conduct"). Rather, these appear to be alternative names for the same claim, that is, that the defendant is liable if it: (i) engaged in extreme and outrageous conduct; (ii) did so intentionally or recklessly so as to cause severe emotional distress; (iii) did indeed cause severe emotional distress; and (iv) harm resulted to the plaintiff. *Id. citing Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970).

Here, Continental challenges only the Plaintiffs' ability to establish the third element: that they suffered from severe emotional distress. Continental argues that under *Espinoza v. Sheridan United Tire*, 655 P.2d 424, 425 (Colo. App. 1982), Colorado adopted Restatement (Second) of Torts, § 46 as establishing the standard for severe emotional distress. Comment j to that section provides that:

> Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be

---

[5]The Plaintiffs concede that the two separately denominated claims are, in fact, the same.

> considered in determining its severity. Severe distress must be
> proved; but in many cases the extreme and outrageous character of
> the defendant's conduct is in itself important evidence that the
> distress has existed.

*Id.*  Continental argues that the Sprengs[6] fail to show that the distress they suffered is sufficiently

severe.  Continental cites a passage from Ms. Spreng's deposition, in which she testified "there is

an extreme amount of stress and pressure here.  I cannot begin to tell you what kind of toll this

has put on me physically, emotionally, financially.  Unreal.  Entirely unreal."  Continental

argues, without elaboration, that "[t]his testimony is insufficient to establish emotional distress

that is so extreme that no reasonable man could be expected to endure it."

Like its prior response on the conversion claim, the Plaintiffs' response on this point

relies almost entirely on citations to allegations in the Complaint.  As explained above, such

citations are insufficient to carry the Plaintiffs' burden of coming forward with sufficient

supporting <u>evidence</u> to avoid summary judgment.  Where the Plaintiffs do cite to evidence in the

record, they do so to establish the outrageousness of the conduct,[7] not the extent of the distress

they suffered because of it.   Thus, the only evidence in the record on this point is Continental's

citation to Ms. Spreng's testimony.  For this reason alone, Continental is entitled to summary

judgment on any claim for outrageous conduct by Mr. Spreng.[8]

---

[6]The Plaintiffs acknowledge that the outrageous conduct claim is only asserted by the
Sprengs, as JFS, being a corporate entity, cannot assert it.

[7]Specifically, the Plaintiffs cite to evidence that Continental's adjuster demanded that the
Plaintiffs release any claim they might have against the welding contractor, and when the
Plaintiffs refused, the adjuster threatened to delay payment of benefits under JFS' policy.

[8]Even if the Court considered the Complaint as evidentiary material for summary
judgment purposes, it would reach the same result with regard to Mr. Spreng's claim because the
only allegations in the Complaint as to the extent of Mr. Spreng's emotional distress are entirely
conclusory.  *Docket* # 3, ¶ 102 ("The mental anguish, emotional distress and suffering, and the

Taking the evidence in the light most favorable to the Plaintiffs, the Court finds that this testimony by Ms. Spreng could support a conclusion by a factfinder that the distress she suffered was "severe." As comment j to the Restatement notes, the severity of the emotional distress is often evidenced by the nature of the conduct causing it. As the Plaintiffs note (and Continental apparently concedes by not challenging it), Colorado recognizes that the mishandling of an insurance claim by an adjuster can give rise to a claim for outrageous conduct. *See McKelvy v. Liberty Mut. Ins. Co.*, 983 P.2d 42, 44 (Colo. App. 1998). One can reasonably expect that the type of emotional distress accompanying outrageous acts by an insurance adjuster handling a claim would include anger, disappointment, and worrying. *See* comment j, *supra.* Although Ms. Spreng's testimony does not use those precise words, her reference to "unreal" physical and emotional stress, coupled with the allegations that Continental's adjuster threatened to delay payment of insurance benefits after a catastrophe that effectively closed the business that provided Ms. Spreng's livelihood, is sufficient to permit a reasonable factfinder to conclude that the distress Ms. Spreng suffered was severe. (Whether a factfinder will conclude as much is an issue that must await trial.)

Accordingly, Continental is entitled to summary judgment on the Plaintiffs' outrageous conduct claim by JFS and Mr. Spreng, but not on the outrageous conduct claim by Ms. Spreng.

### F. CCPA claim

The elements of a claim under the Colorado Consumer Protection Act are: (i) that the defendant engaged in one of several categories of unfair or deceptive trade practices; (ii) the

---

loss of enjoyment of life, suffered by Mr. and Mrs. Spreng as a result of Defendants' actionable conduct, has been and continues to be severe and extreme.")

practice occurred in the course of the defendants business or trade; (iii) the practice significantly impacts the public as actual or potential consumers of the defendant's goods or services; (iv) the plaintiff suffered an injury; and (v) the challenged practice caused the injury. *Park Rise Homeowners Assn. v. Resource Constr. Co.*, 155 P.3d 427, 433 (Colo. App. 2006). Continental challenges the Plaintiffs' ability to establish the third element – that the challenged practices affect the public.

The mere fact that a defendant has privately wronged a particular customer – for example, by breaching its contract with that customer – does not give rise to a CCPA claim. Rather, a plaintiff asserting violation of the CCPA must show that the defendant engaged in a deceptive or unfair trade practice directed at the public as a whole. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 148-49 (Colo. 2003). Whether a plaintiff has shown significant public impact depends on the interplay of several factors, including the number of consumers affected by the practice; the relative sophistication and bargaining power of those consumers, and evidence that the challenged practice has previously affected consumers or is likely to do so again in the future. *Id.* at 149. In *Rhino Linings*, the Colorado Supreme Court found that evidence that 3 dealers out of 550 nationwide who allegedly had been misled about the exclusivity of their territories and who had been represented by counsel during negotiations was insufficient to demonstrate a public impact, rather than a private contractual dispute. *Id.* at 150. In *Coors v. Security Life of Denver Ins. Co.*, 91 P.3d 393, 399 (Colo. App. 2003), *aff'd by equally divided court*, 112 P.3d 59 (Colo. 2005), the court found that evidence that a deceptive practice affecting 1% of an insurer's 20,000 policyholders was insufficient to

show public impact, particularly where the plaintiff purchaser was sophisticated and represented by counsel.

Here, the Plaintiffs first make what appears to be a categorical argument that "bad faith handling of [an] insurance claim implicates the public interests protected by the CCPA." *Citing Showpiece Homes Corp. v. Assurance Co. of America*, 38 P.3d 47, 50-51 (Colo. 2001). *Showpiece Homes* stands only for the proposition that the insurance industry is not exempt from the CCPA; it contains no conclusion that deceptive practices in the insurance field will necessarily have a public impact. 38 P.3d at 57. Indeed, the Colorado Supreme Court definitively rejected that notion in *Brodeur*: "[w]e have never found that the public nature of a particular business satisfies per se the public impact element of a CCPA claim." 169 P.3d at 155 ("the fact that a workers' compensation insurer and an insured have a dispute over a claim does not necessarily mean that other members of the public are or have been affected by the insurer's practices"); *see also Bankruptcy Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 528 (Colo. App. 2008) (finding no public impact in insurer's alleged bad faith handling of claim).

Beyond that, the Plaintiffs offer little factual or legal support for the public impact element of the CCPA claim. They do not, for example, point to evidence of the number of Continental policyholders affected by the alleged deceptive practices or address the relative sophistication of Continental's customers. Indeed, the Plaintiffs point to no evidence at all, relying instead on the fact that Mr. Spreng, in his deposition, testified that all of the allegations in the Complaint are true. Assuming, without necessarily finding, that the Complaint should be treated as an affidavit, the Court has reviewed the various paragraphs in the Complaint cited at page 28 of the Plaintiffs' response and finds none of those allegations, individually or in concert,

sufficient to demonstrate the effect that Continental's practices had on the <u>public</u>, as opposed to the Plaintiffs. Moreover, most of the cited paragraphs are largely conclusory in nature, and give no indication of the number or nature of other Continental customers that were allegedly affected by the practices. Accordingly, the Court finds that the Plaintiffs have failed to come forward with sufficient evidence of a public interest to permit the CCPA claim to proceed to trial, and Continental is entitled to summary judgment on this clam.

### G. Fraud

Continental seeks summary judgment on the Plaintiffs' fraud claim. To state a claim for fraud under Colorado law, the Plaintiffs must show: (i) that Continental made a statement that was false or misleading; (ii) that Continental knew the statement to be untrue or made it with recklessly without regard to its truth; (iii) that it did so with the intent that the Plaintiffs rely upon the statement; and (iv) that the Plaintiffs did indeed rely upon it to their detriment. *See Brodeur*, 169 P.3d at 153; *Nelson v. Gas Research Institute*, 121 P.3d 340, 343 (Colo. App. 2005). Where the allegedly false statement was a promise by Continental to do some act in the future, the Plaintiffs must show that, at the time the statement was made, Continental had a present intention not to perform as it was promising. *Nelson*, 121 P.3d at 343.

Continental lists seven statements that it understands reflect the entirety of the Plaintiffs' claim for fraud. The Plaintiffs' response does not address any additional allegedly fraudulent statements, and thus, the Court confines its analysis to the 7 statements listed by Continental.

With regard to four of the statements – (i) a statement that Continental is "A-Rated," implying that it would provide timely and fair payment of benefits; (ii) that Continental would make timely payment to JFS for the inventory, knowing that JFS' suppliers would be demanding

payment for that inventory within 10 days (but payment was not made to JFS until 19 days later); (iii) that Continental would provide timely payment for other inventory and equipment (but only a partial payment was made nearly two months later); and (iv) that Continental generally promised prompt benefit payments (but did not honor those promises) – Continental contends that the statements entail promises of future action that the Plaintiffs cannot show to have been accompanied by a present intent not to perform. The Plaintiffs' response to this argument is unclear. The Plaintiff does not point to any particular evidentiary material (or even particular portions of the Complaint). Instead, they recite general propositions of law, without any clear indication as to which of Continental's arguments or which of the challenged statements those propositions relate.

As best the Court can determine, with regard to the four statements described above, the Plaintiffs' primary response is that "Defendant's intention at the point of making representations about its future conduct . . . is evidence by false statements of existing facts made to Plaintiffs and the Plaintiffs relied on Defendant's statements." *Docket* # 68 at 32. The Court understands this argument to mean that the Plaintiffs believe that Continental's present intention not to perform as it was promising can be demonstrated by the fact that it made (unspecified) false statements about other existing facts. The Plaintiffs appear to rely on *Teare v. Sussman*, 210 P.2d 446, 447 (Colo. 1949), for this proposition: "[w]here a present intention, even though as to future conduct, is predicated upon or evidenced by false statements as to existing facts, such statements, if relied on, constitute actionable fraud." This statement is best understood upon reviewing the facts of *Teare*. There, the defendant landlord evicted the plaintiff tenant, claiming that he was going to renovate the apartment she occupied. The defendant did so by bringing a

person to the apartment he claimed was a contractor, claiming that the contractor had drafted plans for the remodel and obtained a building permit and was prepared to begin the work, and that the tenant would have to vacate the apartment to permit the remodel.  In fact, the contractor was not a contractor, the plans had not been made, and no building permit had been obtained. Reversing the trial court's finding that these misrepresentations were of the landlord's intention to act in the future and that the tenant failed to show the landlord's present intent not to perform the promised act, the Colorado Supreme Court found that "the representations alleged were not merely as to future intentions, but were false statements as to existing facts."  *Id.* at 447.  It then uttered the language quoted above.  In this context, one can understand the quoted language as reflecting a finding that the landlord's present intent not to perform the future act of renovating the apartment was established by evidence that his predicate statements of existing fact – that he had a contractor and plans ready – were false.  Put simply, *Teare* simply demonstrates the unremarkable proposition that a present intent not to perform a future act can be found where the actor makes demonstrably false statements about his current preparations to perform the promised act.

Nevertheless, the Plaintiffs do not specifically identify the "false statements of existing facts" they allege permit the inference that Continental never intended to perform as it promised. In the absence of some articulation of these false statements of existing fact, the Plaintiffs have failed to show facts that would suggest Continental lacked a present intent to perform according to its promises, and Continental is entitled to summary judgment on the fraud claim premised on the four listed statements.

Next, Continental addresses the Plaintiffs' contention that its statement that it "had knowledge and familiarity in underwriting feed mills" was false. According to Continental, the Plaintiffs' only evidence that this statement was false is that Continental "insist[ed] that [it] issue checks directly to farmers for the lost grain, which [the Plaintiffs contend] would result in a violation of Colorado law." The Plaintiffs do not point to any other evidence of falsity in their response, or otherwise address this statement in any greater detail. On this record, the Court finds that no reasonable factfinder could infer that Continental's statement was false – *i.e.* that it did <u>not</u> have knowledge and familiarity in underwriting feed mills – simply because it insisted that checks for lost grain be issued directly to JFS' customers. Even assuming, without necessarily finding, that Continental's proposal did indeed violate Colorado law,[9] the fact that it proffered an unreasonable solution to a single problem is too remote and isolated to suffice to demonstrate that Continental did not have experience in insuring feed mills. Accordingly, Continental is entitled to summary judgment on the fraud claim premised on this statement.

Finally, Continental addresses the remaining two allegedly false statements: (i) that Continental's adjuster "waited too long before advising" JFS that Continental would be making certain adjustments to the amount it would reimburse JFS for payments to its suppliers; and (ii) that Continental failed to reimburse JFS for the value of the inventory taken by the salvage company. Continental correctly notes that these allegations do not involve "statements" of any

---

[9]Notably, neither the Complaint nor the Plaintiffs' response clearly identifies the manner in which the payment scheme contemplated by Continental would violate the law. Paragraph 92(c) of the Complaint appears to allege that JFS "must . . . maintain original cancelled checks for grains paid to farmers." The source of the "law" compelling this conclusion is not stated, nor is there any explanation as to why JFS could not obtain the cancelled checks from Continental when and if the need arose.

kind, fraudulent or not. The Plaintiffs make an abbreviated and unspecific argument in their

response that fraud can result from a party's concealment of a material fact when it has a duty to

correct a misapprehension, *see e.g. First Horizon Merchant Services, Inc. v. Wellspring Capital*

*Management LLC,* 166 P.3d 166, 176 (Colo. App. 2007), but beyond stating that proposition, the

Plaintiffs offer no argument as to how that argument applies to these particular statements.[10] The

Court declines to attempt to fashion an argument for the Plaintiffs on this point. Accordingly,

the Court finds that Continental is entitled to summary judgment with regard to the entirety of

the Plaintiffs' claims of fraud.

### G. Civil conspiracy

Finally, Continental seeks judgment on the Plaintiffs' claim for civil conspiracy. Under

Colorado law, civil conspiracy is a derivative cause of action, not an actionable claim in and of

itself. *Double Oak Constr. LLC v. Cornerstone Development Intl. LLC*, 97 P.3d 140, 146 (Colo.

App. 2003). In essence, it is a means by which a plaintiff can impose liability on one party for

unlawful conduct engaged in by another.[11] *See generally Resolution Trust Corp. v. Heiserman*,

898 P.2d 1049, 1055 (Colo. 1995) ("the essence of a civil conspiracy claim is not the conspiracy

itself, but the actual damages resulting from the acts done in furtherance of the conspiracy").

Thus, to state a claim against Continental for civil conspiracy, the Plaintiffs must show that

Continental reached a meeting of the minds with another person as to an objective or course of

---

[10]Among other things, the party asserting a fraudulent concealment claim must
demonstrate facts showing that "equity and good conscience" compel the defendant to speak.
*First Horizon, supra.* The Plaintiffs do not identify the fact that allege satisfy this element nor
explain the principles of equity or good conscience that apply.

[11]Logically, an unlawful act committed by Continental itself, rather than by a co-
conspirator, would be directly actionable.

action, the other person engaged in an unlawful act in furtherance of that agreement, and that the Plaintiffs were damaged as a result. *Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo. App. 2006); *Double Oak*, 97 P.3d at 146. The unlawful act committed by the co-conspirator must be independently actionable, whether in tort or contract. *Id.* Continental challenges the Plaintiffs' ability to establish any of these elements.

In response, the Plaintiffs first refer back to the text of the Complaint. The operative portion of the Complaint consists of a single, conclusory assertion: "[Continental and former Defendant Murphy Insurance] conspired and agreed (by words or conduct) to frustrate the fire investigation by officials investigating the fire and to deprive Plaintiffs of insurance proceedings in violation of their insurance contract and Colorado law." *Docket # 3*, ¶ 162. The Plaintiffs then allege that "Defendant in this case employed the first-party fire investigator, and the demolition company, in such a way as to dispose of any evidence showing that the [welding contractor] had started the fire." These assertions are insufficient to state a cause of action for civil conspiracy. Even assuming that the Plaintiffs allege that Continental acted in concert with a fire investigator and/or demolition company "to dispose of any evidence," the Plaintiffs fail to establish how the disposal of such evidence constitutes an "unlawful act." For example, the Plaintiffs do not identify the source of any duty of the fire investigator or demolition company to preserve the "evidence" for some purpose, or show how the circumstances of the destruction of the evidence violated that duty. Nor do the Plaintiffs offer anything but conclusory assertions as to the nature of any meeting of the minds between Continental and the fire investigator and/or demolition company. (The Plaintiffs' response makes no reference whatsoever to Murphy Insurance.) Continental is entitled to summary judgment on this claim.

## <u>CONCLUSION</u>

For the foregoing reasons, Continental's Motion for Summary Judgment **(# 60)** is **GRANTED IN PART**, insofar as Mr. and Ms. Spreng lack standing to pursue any claims sounding in contract relating to the insurance policy between Continental and JFS, and thus Mr. and Ms. Spreng's claims for declaratory judgment, breach of contract, and breach of the covenant of good faith and fair dealing are **DISMISSED** for lack of subject matter jursidiction; Continental is entitled to judgment on all Plaintiffs' claims of conversion, abuse of process, violation of the CCPA, fraud, and civil conspiracy; and Continental is entitled to judgment on JFS' and Mr. Spreng's claim for outrageous conduct; and **DENIED IN PART**, insofar as there is a genuine dispute as to material fact requiring trial of Ms. Spreng's outrageous conduct claim. Because this ruling disposes of all claims asserted by Mr. Spreng, the caption of this case is **AMENDED** to omit reference to Plaintiff Wayne Spreng. The claims proceeding to trial are: (i) JFS' claims for declaratory judgment; (ii) JFS' claim for breach of contract; (iii) JFS' claim for breach of the covenant of good faith and fair dealing; and (iv) Ms. Spreng's claim for outrageous conduct.

Dated the 5th day of March, 2009

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge

27